IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL W. MINGLE | * | |
| Plaintiff, | * | |
| v. | * | Case No. SAG-10-cv-3546 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | * | |
| Defendant. | * | |

\*\*\*\*\*\*

**MEMORANDUM**

Pending before this Court, by the parties' consent, are cross–motions for summary judgment concerning the Commissioner's decision denying Daniel W. Mingle's claims for Supplemental Security Income ("SSI") and Disability Insurance benefits ("DIB"). (ECF Nos. 12, 15). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's motion, DENIES Mr. Mingle's motion, VACATES the Commissioner's denial of benefits, and REMANDS this matter for further proceedings consistent with this opinion.

**I. BACKGROUND**

Daniel W. Mingle ( "Mr. Mingle" or "Claimant"), applied for DIB and SSI on June 19, 2008, alleging that he has been disabled since April 8, 2008 due to asthma and diabetes. (Tr. 110, 126). On April 8, 2008, Mr. Mingle lost his job as a security guard, which he had held for almost six years. (Tr. 127). Mr. Mingle's SSI and DIB claims were denied initially and upon

reconsideration. (Tr. 57-59, 66-67). A hearing was held before the Honorable William F. Clark, Administrative Law Judge ("ALJ"), on February 18, 2010, where Mr. Mingle appeared with counsel and testified. (Tr. 18-47). The ALJ subsequently denied Mr. Mingle's claims in a decision dated February 26, 2010. (Tr. 8-14). The ALJ found that although Mr. Mingle's asthma was a "severe" impairment as defined in the Regulations, it did not meet or medically equal any of the listed impairments found in the Regulations. (Tr. 10-11). The ALJ found that Mr. Mingle had other non-severe impairments, namely hypertension, diabetes mellitus, a stiff finger, and depression, which "do not have a significant effect on the claimant's ability to perform basic work activities." (Tr. 10-11). The ALJ also determined that Mr. Mingle retained the residual functional capacity to perform a limited range of medium work, including his past relevant work as a security guard and hotel housekeeper. (Tr. 11-13). Accordingly, the ALJ found Mr. Mingle was not disabled. (Tr. 13). On November 19, 2010, the Appeals Council denied Claimant's request for review, making his case ready for judicial review. (Tr. 1-4).

**II. STANDARD OF REVIEW**

The function of this Court is not to review Mr. Mingle's claim *de novo* or to reweigh the evidence of record. *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987); *see* 42 U.S.C. § 405(g) (2009).

Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1996). It is such relevant evidence as a reasonable mind might accept as adequate to support a verdict were the case before a jury.

*Johnson v. Califano,* 434 F.Supp. 302, 307 (D.Md. 1977). Usually, if substantial evidence supports the Commissioner's decision, the decision must be upheld. *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir.1986); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972); *see* 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's decision to determine whether it is supported by substantial evidence, this Court also must determine whether the ALJ properly applied the law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman,* 829 F.2d at 517. After reviewing the ALJ's decision, this Court may affirm, modify, or reverse the decision of the ALJ and may remand the case for a rehearing. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991); *Coffman,* 829 F.2d at 519; *Vietek v. Finch,* 438 F.2d 1157, 1158 (4th Cir.1971); *see* 42 U.S.C. § 405(g).

In determining whether a claimant is disabled within the meaning of DIB, the Commissioner has promulgated regulations that set forth the following five-step sequential evaluation procedure.

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 *et seq*. If so, the claimant is not disabled.
>
> (2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.
>
> (3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.
>
> (4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.
>
> (5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work

> experience. The Commissioner bears the burden of proof at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995). If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920 (2009); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

**III. ALJ'S DECISION**

After reviewing the medical record and hearing testimony, the ALJ evaluated Mr. Mingle's claims using the Social Security Administration's five-step sequential process and made the following relevant findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since April 8, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: asthma (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except he is limited to unskilled work in an environment with no concentrations of dust, fumes, or smoke; he can never climb ladders, ropes, and scaffolds; he cannot be exposed to hazards including moving machinery and unprotected heights; and he must not be exposed to extreme hot and cold temperatures of ambient air.

6. The claimant is capable of performing past relevant work as a security guard and hotel housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act since April 8, 2008 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 8-14).

IV. SUMMARY OF EVIDENCE

At the time of his administrative hearing, Daniel W. Mingle was forty-eight years old, 5'3" tall, and weighed approximately 106-108 pounds. (Tr. 29, 33). Mr. Mingle has a GED. (Tr. 32). He alleged disability due to asthma and diabetes. (Tr. 48).

Mr. Mingle was diagnosed with diabetes in 2002, when he went to a hospital because he was not feeling well. (Tr. 22). He had been taking medication for diabetes, but stopped because he could not afford to pay for the medications. (Tr. 23). Mr. Mingle applied for medical assistance, but was denied benefits. (Tr. 23). He has not applied for prescription assistance. (Tr. 23). He does not maintain a regular diet. (Tr. 25). He does not test his blood sugar. (Tr. 26). He has not gone to the emergency room for treatment. (Tr. 26). He has not sought treatment for depression. (Tr. 29). He obtained a job offer with Broadway Services doing security, but then began having problems with his legs and could not do the job. (Tr. 31). He walks for exercise. (Tr. 31). Mr. Mingle does not know his blood pressure and he does not take any medications for blood pressure. (Tr. 33). He was born with asthma and has wheezing. (Tr. 35-36). Mr. Mingle testified that he does not attend concerts or movies anymore, and that he has thought about taking his own life, but has never acted on it. (Tr. 36-38). His appetite comes and goes, as does his energy. (Tr. 36-38). He lives with roommates, some of whom smoke. (Tr. 36-38).

On June 23, 2008, about two and a half months after he lost his job, Mr. Mingle visited the Jai Medical Center. The notes indicate that the purpose of his visit was to get "SSI papers filled out." (Tr. 188). He was diagnosed with asthma, allergic rhinitis, foot pain, and diabetes. (Tr. 188). The physician prescribed an albuterol inhaler and a nasal spray. (Tr. 188). Two physicians reviewing the records from the Jai Medical Center for the purposes of determining his

5

eligibility for benefits determined that Mr. Mingle's medical condition was not severe. (Tr. 190, 191).

Between the time the denial of his disability benefits was affirmed on reconsideration in December, 2008, and the time of his hearing before the ALJ, Mr. Mingle was examined at Total Health Care ("THC") on four occasions. On the first visit on January 24, 2009, the physician noted that Mr. Mingle was "in today for physical exam." (Tr. 198). Mr. Mingle self-reported that he was a diabetic with asthma and that he was going blind in one eye. (Tr. 198). He reported that he suffered intermittent wheezing. (Tr. 198). On examination, the physician noted some wheezing in the right lobe. (Tr. 198). The physicals form noted that for asthma, Mr. Mingle had "no frequent medical care only PRN ER visit."[1] Tr. 200. Mr. Mingle's blood pressure was 134/94 manual and 145/99 automatic. (Tr. 198). The physician did a vision screening, demonstrating that Mr. Mingle's vision was 20/25 in his right eye and 20/50 in his left eye. (Tr. 201). The physician diagnosed diabetes, asthma, a need to rule out depression, and a urinary tract infection. (Tr. 199). The doctor prescribed albuterol and advair for asthma, metformin for diabetes, and lisinopril for high blood pressure. (Tr. 199). The doctor also made a referral to CESH for a depression evaluation, and to other specialists for dental, pulmonology, and ophthalmology. (Tr. 199).

Mr. Mingle appeared for follow up on February 4, 2009. At that visit, his random blood glucose was elevated, at 157. (Tr. 203). His blood pressure was 121/81, or close to normal limits. (Tr. 196). At the conclusion of the appointment, Mr. Mingle was directed to call for a follow up appointment in two months, because the April schedule was not yet available (Tr. 196).

---

[1] PRN is an abbreviation commonly used in medicine to mean "as needed" or "as the situation arises."

On March 26, 2009, Mr. Mingle underwent a chest X-ray. The report showed that "the lungs are clear." (Tr. 205).

Despite the original recommendation that he be seen again in April, Mr. Mingle did not appear at THC again until August 15, 2009, when his chief complaint was "needs paperwork to be completed" because he "acquired legal counsel for DSS suit." (Tr. 193). His physical examination was normal. (Tr. 193). Mr. Mingle's blood pressure on that date was 126/76. (Tr. 193-94).

On August 15, 2009, Dr. Susan Clanzy, the physician who treated Mr. Mingle at the clinic on that date, submitted a medical opinion regarding Mr. Mingle's physical and mental ability to do work-related activities. (Tr. 221-229). Dr. Clanzy opined that, among other things, Mr. Mingle can lift and carry 10 pounds on a regular basis, 30-40 pounds occasionally and 5 pounds frequently; can stand and walk for one-half hour during an 8-hour work day; has no restrictions on sitting; can occasionally perform postural activities such as climbing, balancing, stooping, crouching, kneeling and crawling; has decreased vision; and cannot be involved with heights, moving machinery, extreme temperatures, chemicals, dust, noise, fumes, humidity, or vibration. (Tr. 221-23). As support for her conclusions, Dr. Clanzy cited decreased lung function and capacity secondary to asthma, and peripheral neuropathy and retinopathy secondary to diabetes. (Tr. 221-223). As to her assessment of his mental limitations, Dr. Clanzy noted that Mr. Mingle suffers from "Depression (↓ mood, poor social interaction; ↓ focus/concentration)." (Tr. 277). On the mental health form, Dr. Clanzy classified all of the factors regarding Mr. Mingle's ability to make occupational/performance/personal-social adjustments in the fair to good range. (Tr. 226-28). Dr. Clanzy further stated that Mr. Mingle does not take any medications for his mental impairment, and that he can manage benefits in his own interest. (Tr.

226-228) Dr. Clanzy modified the form to reflect that she is not Mr. Mingle's "main treating physician," but opined that his mental and physical limitations have been present for more than 5 years. (Tr. 224)

Mr. Mingle had a follow up appointment at THC on September 11, 2009, where he reported no complaints. (Tr. 210). His blood pressure was 125/75. (Tr. 210). The physician noted mild wheezing in his lungs, and the physician's notes reflect that Mr. Mingle's spirometry was "of poor quality but suggestive of moderate to severe obstruction." (Tr. 211). However, the actual test results indicate "Normal Spirometry." (Tr. 212). The physician noted that the plan is to continue the medications for asthma, follow up for "sores on body," and return in 6 months. (Tr. 211).

**V. ANALYSIS**

Mr. Mingle's primary argument is that the ALJ improperly denied benefits at Step Four of the sequential evaluation process used to determine whether a claimant is disabled.[2] In fact, the ALJ's analysis was deficient in two ways. First, the ALJ rejected Dr. Clanzy's opinion

---

[2] Mr. Mingle also argues that the ALJ erred by not considering his hypertension to be a severe impairment at Step Two. The ALJ determined that hypertension was a non-severe impairment because it did "not have a significant effect on the claimant's ability to perform basic work activities." Tr. 10. An impairment is "not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p and 96-4p). That is precisely the case with Mr. Mingle's hypertension. He had significantly elevated blood pressure during his first visit to THC on January 24, 2009. (Tr. 198). The physician prescribed medication for the high blood pressure. (Tr. 199). In all of his medical visits after that first visit, Mr. Mingle's blood pressure was only slightly elevated over normal limits. (Tr. 188, 193, 195, 210). Dr. Clanzy does not attribute any work-related restrictions to Mr. Mingle's hypertension. (Tr. 221-223). Mr. Mingle testified that he does not know his blood pressure, was not aware of any treatment for blood pressure, and did not know he ever took any medication for blood pressure. (Tr. 33). He does not attribute any of his inability to work to hypertension or its effects. (Tr. 24). On this record, the ALJ's finding that hypertension was not a severe impairment is supported by substantial evidence and does not constitute a basis for remand.

without conducting sufficient investigation of Mr. Mingle's medical conditions. Second, the ALJ failed to properly evaluate Mr. Mingle's mental health condition.

### 1. The ALJ Did Not Conduct a Sufficient Investigation of Mr. Mingle's Medical Conditions.

In this case, because Mr. Mingle sought medical treatment on a limited number of occasions, the ALJ was presented with only one medical opinion from a provider, Dr. Clanzy, who had only seen Mr. Mingle on one or two occasions. Moreover, some of Dr. Clanzy's conclusions, as the ALJ noted, did not appear to be supported by "the medical evidence of record" in terms of objective medical test results and findings. (Tr. 12).

Under the circumstances, it was reasonable for the ALJ to decline to give controlling weight to Dr. Clanzy's opinion. A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig v. Chater,* 76 F.3d 585 (4th Cir.1996); *see also* 20 CFR § 404.1527(d)(2). While treating physician's opinions on issues reserved to the Commissioner – such as determining a claimant's RFC – are not entitled to controlling weight, the ALJ still must evaluate all of the evidence in the case record to determine the extent to which the opinion is supported by the record. *Eichelberger v. Astrue,* 2009 WL 2602360 at *5 (D.MD. Aug. 21, 2009); Social Security Ruling 06-03p. Federal regulations require an ALJ to assess a number of factors when considering what weight to assign to the medical opinions presented. 20 CFR § 404.1527(d). Specifically, the reasons for giving greater weight to a treating source are because the treating doctor can "provide a detailed, longitudinal picture of [claimant's] medical impairment(s) . . . that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 CFR § 404.1527(d)(2). The regulations provide that a treating physician's opinion will receive greater

weight "the longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by a treating source." 20 CFR § 404.1527(d)(2)(i). Moreover, a treating source's opinion will be given greater weight if it is supported by relevant evidence such as "medical signs and laboratory findings." 20 CFR § 404.1527(d)(3). Because Dr. Clanzy did not have a longstanding relationship with Mr. Mingle and did not cite relevant evidence to support her opinion, the "treating physician" rule did not require that her opinion be afforded controlling weight.

However, the mere fact that Dr. Clanzy's opinion may not merit controlling weight does not permit a wholesale rejection of her opinion in the absence of other medical evidence. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . " *Sims v. Apfel*, 530 U.S. 103, 111 (2000). Because the ALJ's role is investigative, and because Dr. Clanzy's opinion is the only medical opinion in the record, the ALJ could not reject Dr. Clanzy's opinion based on his own lay opinion of the import of Mr. Mingle's failure to seek treatment, particularly with some evidence in the record that financial considerations had impacted Mr. Mingle's treatment decisions. The ALJ could have ordered a consultative examination, could have contacted Dr. Clanzy to ferret out the reasons for her relatively conclusory opinion, or could have investigated the facts in some other manner. However, given the contradictory and conclusory medical evidence in the record and the relative weakness of Dr. Clanzy's relationship with Mr. Mingle, this simply was not a case in which the ALJ sufficiently carried out his investigative function and rendered his decision based upon substantial evidence. This case will be remanded for that investigative function to be performed.

### 2. The ALJ Did Not Follow the Special Technique For Evaluating Mental Impairments

The ALJ also failed to apply the required "special technique" for evaluating the severity of mental impairments at each level of the administrative process as required by 20 C.F.R. § 404.1520a. The regulations command the ALJ to use a particular procedure, known as the "special technique," to evaluate the severity of mental impairments at the second and third steps of the five step sequential process. *See* 20 C.F.R. § 404.1520a(a); *Rabbers v. Comm'r of the Soc. Sec. Admin.,* 582 F.3d 647, 652 (6th Cir.2009); *Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008) (citing *Schmidt v. Astrue,* 496 F.3d 833, 844 n. 4 (7th Cir.2007)). The ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he or she] ha[s] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). The ALJ must "then rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas. *Id.* § 404.1520a(b)(2), (c). The ALJ must document the application of the technique in the hearing decision, incorporating pertinent findings and conclusions and documenting the significant history and functional limitations that were considered. *Id.* § 404.1520(e)(2).

In this case, the ALJ did not explicitly invoke the "special technique" at all. In step two, the ALJ, with no factual analysis, found that Mr. Mingle's depression was non-severe because it did "not have a significant effect on the claimant's ability to perform basic work activities." (Tr. 10). At the hearing, the ALJ asked a significant number of questions regarding Mr. Mingle's mental health, including questions about his suicidal ideations, motivation, appetite, social life, and energy levels. (Tr. 36-37). However, the ALJ did not make any findings or conclusions

regarding Mr. Mingle's responses to those inquiries in his hearing decision. Instead, the hearing decision simply states

> [t]he claimant alleges depression, but there is no indication in the record of any prescriptions, medications, or emergency room visits concerning said his [sic] condition. Records from Total Health Care dated January 24, 2009 note that the claimant was referred to "CESH" for depression, but there is nothing in the record to indicate that the claimant sought treatment and no such records have been submitted.

(Tr. 12). At the hearing, the ALJ noted that depression was not originally raised on Mr. Mingle's disability application. (Tr. 39-40). However, it is clear that by the time of the hearing, the ALJ was aware that depression was a potential issue from the notations in Mr. Mingle's medical records, (Tr. 197, 199, 214), and from Mr. Mingle's responses to the relevant inquiries at the hearing. (Tr. 36-37).

The ALJ failed to follow the process of (1) evaluating the evidence to determine whether Mr. Mingle has a medically determinable mental health impairment and, (2) if he does, rating the degree of impairment in the relevant functional areas. With sufficient evidence present in the record indicating that depression is a potential issue, simply relying on the fact that Mr. Mingle has never sought treatment for depression does not fulfill the ALJ's duties to apply the special technique.

**Conclusion**

Based on the foregoing, the Court DENIES Claimant's Motion, DENIES Defendant's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion. A separate order follows.


Dated: October 12, 2011                                    _____/s/_____
                                                           Stephanie A. Gallagher
                                                           United States Magistrate Judge